NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
SYLVIA R. EWALD (Cal. Bar No. 300267)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0717
     Facsimile: (213) 894-0141
     E-mail:   sylvia.ewald@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                    v.<br><br>YANNICK MAI,<br><br>             Defendant. | CR No. 17-00423-AB<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT YANNICK MAI<br><br><br>Sentencing Date: April 5, 2019<br>Sentencing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>             Hon. André Birotte<br>             Jr. |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Sylvia R. Ewald, hereby files its sentencing position for defendant YANNICK MAI.

//

//

//

//

//

1    This sentencing position is based upon the attached memorandum

2 of points and authorities, the Presentence Investigation Report, the

3 files and records in this case, and such further evidence and

4 argument as the Court may permit.

5  Dated: March 14, 2019           Respectfully submitted,

6                                  NICOLA T. HANNA
                                   United States Attorney
7
                                   LAWRENCE S. MIDDLETON
8                                  Assistant United States Attorney
                                   Chief, Criminal Division
9

10                                 _____/s/_____
                                   SYLVIA R. EWALD
11                                 Assistant United States Attorney

12                                 Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

Defendant YANNICK MAI ("defendant") attempted to smuggle methamphetamine through Los Angeles International Airport ("LAX") to Tahiti.  As a result of this conduct, defendant pleaded guilty pursuant to a plea agreement to possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).  (Plea Agreement (Dkt. 69); Minutes of Change of Plea Hearing (Dkt. 71).)  The United States Probation and Pretrial Services Office ("Probation Office") has filed its Presentence Investigation Report ("PSR"), in which it provides that defendant is subject to a ten-year mandatory minimum sentence and sets out the following Guidelines calculations: a total offense level of 35, a criminal history category of I, and, accordingly, a Guidelines imprisonment range of 168 to 210 months.  (PSR ¶¶ 77-78.)  The Probation Office also filed a letter in which it recommends a sentence of imprisonment of 120 months.  (Dkt. 72.)

The government believes that defendant is safety-valve eligible and objects to a number of the Probation Office's Guidelines calculations.  If the government's objections are sustained, the total offense level will be 29, resulting in a Guidelines range of 87 to 108 months.  Taking into account the factors identified in 18 U.S.C. § 3553(a), the government recommends that defendant be sentenced to a term of 87 months' imprisonment, five years' supervised release, and a $100 mandatory special assessment.

**II.   STATEMENT OF FACTS**

On June 10, 2017, defendant was caught attempting to smuggle methamphetamine through security at LAX, intending to transport the

1

methamphetamine to Tahiti, where it would be distributed to others.
(PSR ¶ 11.)  Defendant was traveling with two other people, his
daughter TEHEA MAI and an acquaintance named GHISLAINE TAOAHERE
COUPEL-GERMAIN.  Both TEHEA MAI and COUPEL-GERMAIN also attempted to
smuggle methamphetamine through security and onto the plane to
Tahiti.  (PSR ¶¶ 12-13.)  Laboratory analysis of the methamphetamine
defendant was carrying determined that the methamphetamine consisted
of 1382 grams of actual methamphetamine.  (PSR ¶ 16; see also Plea
Agreement (Dkt. 69).)

**III. THE PRESENTENCE REPORT AND GUIDELINES CALCULATIONS**

    In calculating the offense level, the Probation Office begins
with a base offense level of 36 under USSG § 2D1.1(c)(2), on the
basis of the amount and purity of methamphetamine defendant and his
co-defendants possessed.  (PSR ¶¶ 24-31.)  The Probation Office then
applies a two-level increase under USSG § 3B1.1(c) because he acted
as an organizer.  (PSR ¶ 36.)  Last, the Probation Office subtracts
three levels for acceptance of responsibility under USSG § 3E1.1(a)
and (b).  (PSR ¶¶ 40-41.)  The Probation Office determines
defendant's criminal history category to be I, based upon a criminal
history score of 0.  (PSR ¶ 47.)  Taking the total offense level of
35 and criminal history category of I, the Probation Office concludes
that the Guidelines imprisonment range is 168 to 210 months.  (PSR
¶ 87.)

    The government objects to a number of the Probation Office's
calculations.  First, the government objects to the base offense
level.  The Probation Office has determined defendant's base offense
level to be 36, accounting for the methamphetamine not only that
defendant himself possessed but also the methamphetamine that MAI and

COUPEL-GERMAIN possessed.  (PSR ¶¶ 24-31.)  The parties agreed in defendant's plea agreement that the applicable base offense level is 34.  (Dkt. 69 at 7.)  This is based upon the amount of methamphetamine that only defendant, and not his co-defendants, possessed.  (Dkt. 69 at 6.)  The government takes the position that defendant's base offense level should account for only the drugs he possessed, and not for the drugs his co-defendants possessed.

Second, the government also objects to the application of a two-level increase for aggravating role.  The government initially took the position that defendant maintained a leadership position during the offense (PSR ¶ 33), but based upon information learned during a safety-valve proffer, now takes the position that he did not and that no aggravating role adjustment is appropriate.  The government understands that defendant was acting as a courier, and accordingly believes that no upward adjustment is appropriate.

Third, while the government initially believed that defendant was not safety-valve eligible (PSR ¶ 33), it now takes the position that he is safety-valve eligible.  The defendant has truthfully proffered.  Additionally, as discussed above, based upon information learned during that proffer, the government believes that defendant was not acting in a leadership capacity.  If this Court determines that defendant is safety-valve eligible, the ten-year mandatory minimum sentence is inapplicable and a two-level decrease under U.S.S.G. § 2D1.1(b)(18) is applicable.

The government accordingly calculates defendant's total base offense level to be 29, criminal history category to be I, resulting in a Guidelines range of 87 to 108 months.

3

## IV.   THE GOVERNMENT'S SENTENCING POSITION

### A.   A Custodial Sentence of 87 Months Is Justified and Appropriate

The government's recommendation of 87 months' imprisonment is appropriate and justified in light of the factors set forth under Title 18, United States Code, section 3553(a), namely, the nature and circumstances of the offense, the history and characteristics of defendant, and the need for the sentence to reflect the seriousness of the offense and to afford adequate deterrence to criminal conduct. As discussed below, an 87-month term of imprisonment, which falls at the low end of the applicable Guidelines range, appropriately accounts for the aggravating and mitigating circumstances in this case.

First, the nature and circumstances of defendant's offense are serious.  See 18 U.S.C. § 3553(a)(1).  Defendant possessed with the intent to transport to and distribute in another country a significant amount of methamphetamine.  (PSR ¶¶ 11, 16-17.)

Second, the recommended sentence appropriately takes into consideration defendant's history and characteristics.  See 18 U.S.C. § 3553(a)(1).  Defendant has no criminal history in the United States.  (PSR ¶ 48.)

Third and finally, the government's recommended sentence addresses the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and protects the public from further crimes of defendant.  See 18 U.S.C. § 3553(a)(2).  Defendant accepted responsibility by pleading guilty. His lack of criminal history in the United States is a mitigating circumstance.  Given the seriousness of the offense, a significant

4

term of custody is necessary to protect the public from further crimes of defendant and deter defendant from engaging in future criminal conduct. In sum, an 87-month sentence is appropriate based on the factors set forth in 18 U.S.C. § 3553(a), including the mitigating circumstances of defendant's history and his role as a courier.

**B. The Recommended Supervised Release Term, Fine, and Special Assessment Are Appropriate**

The imposition of a five-year term of supervised release is warranted in light of the seriousness of the instant offense and defendant's history and characteristics. Supervision will help prevent defendant from committing further crimes and from attempting to enter the United States. The Probation Office has determined that defendant does not have the ability to pay a fine. (PSR ¶83.) The government agrees with the Probation Office's assessment and recommends that defendant not be ordered to pay a fine. The government likewise recommends that no restitution be ordered. A special assessment of $100 for defendant's conviction is mandatory. (PSR ¶ 94.)

**V. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court impose a low-end Guidelines sentence of 87 months' imprisonment, a five-year term of supervised release, and a $100 special assessment.